IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| KENNETH BROWN, # K-75200, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 17-cv-298-MJR |
| JOHN BALDWIN, SHERRY BENTON, SANDRA FUNK, and STATE of ILLINOIS, | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Shawnee Correctional Center ("Shawnee"), brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 in the Central District of Illinois. The case was filed there on July 14, 2016, under Case No. 16-cv-3215. Plaintiff asserted claims that arose during his incarceration at Taylorville Correctional Center ("Taylorville"), as well as issues concerning his later confinement at Shawnee.

On September 20, 2016, the Central District dismissed Plaintiff's original Complaint (Doc. 1) for failure to state a claim upon which relief may be granted, and allowed him 30 days to re-plead. (Doc. 7). Plaintiff's First Amended Complaint (Doc. 17) likewise failed to state a claim for the violation of Plaintiff's Eighth Amendment rights to be free of cruel and unusual punishment during his incarceration at Taylorville Correctional Center. (Doc. 16). On March 21, 2017, the Central District dismissed Plaintiff's complaint as it relates to Taylorville for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. (Doc. 16, p. 8). The court terminated the Defendants associated with Taylorville, and

1

transferred the matter to this Court for a threshold determination as to whether Plaintiff stated any colorable claims arising from his incarceration at Shawnee. (Doc. 16).

This case is now before the Court for a preliminary review under 28 U.S.C. § 1915A of the claims relating to Plaintiff's confinement at Shawnee contained in the First Amended Complaint (Doc. 17).

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate

abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After fully considering the factual allegations in Plaintiff's Complaint, the Court concludes that this action is subject to summary dismissal.

### The Complaint

The remaining Defendants in this action are John Baldwin (Acting Director of the Illinois Department of Corrections – IDOC), Sherry Benton (IDOC Administrative Review Board Member), Sandra Funk (IDOC Transfer Coordinator), and the State of Illinois. Each of the individual Defendants is based in Springfield, Illinois (Doc. 17, p. 2).

In Plaintiff's statement of claim, pages 5-7 describe incidents that occurred at Taylorville which have already been considered and dismissed by the Central District. Plaintiff's narrative turns to Shawnee at the bottom of page 7 and continues through page 8 of the Complaint. (Doc. 17, pp. 7-8).

In July 2014, Plaintiff had a hearing on a disciplinary report at Taylorville. He was found guilty of the infraction, and part of his recommended punishment was a disciplinary transfer to Shawnee. Plaintiff filed a grievance over the discipline imposed, and that grievance was still pending on July 30, 2014, when Plaintiff was transferred to Shawnee. (Doc. 17, p. 7). Plaintiff asserts that Funk was responsible for transferring him from Taylorville to Shawnee, and that the transfer violated an Illinois statute, which provides that an agency's administrative decision does not become final until rehearing or review is "had or denied." (Doc. 17, pp. 7-8 (referencing 735 ILCS 5/3-101)). He further claims that Funk knew that Shawnee staff would "continue the

disciplinary infraction" imposed on him despite the fact that his segregation time should have ended on July 30, 2014.

Upon Plaintiff's arrival at Shawnee on July 30, 2014, he was placed in "Receiving" for 21 days rather than in general population. While there, Plaintiff was treated like he was in segregation – he could not walk to meals, and was given only 2 showers and 2 hours in the yard during the 21-day period. During the time in "Receiving," Plaintiff also had no gym or dayroom privileges (he states that dayroom would ordinarily have been allowed for 1.5 hours twice a day). In his cell, the plugs for electronics had something stuck in them and the cable outlet had been removed from the wall. (Doc. 17, p. 8).

Plaintiff seeks monetary damages from the Illinois Department of Corrections for the alleged violations of his rights from July 15 through August 19, 2014. (Doc. 17, p. 9).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Fourteenth Amendment claim for improperly transferring Plaintiff to Shawnee Correctional Center on July 30, 2014, and keeping him confined in segregation-like placement through August 19, 2014;
>
> **Count 2:** Eighth Amendment claim for subjecting Plaintiff to unconstitutional conditions of confinement at Shawnee Correctional Center from July 30, 2014, through August 19, 2014.

Both counts shall be dismissed for failure to state a claim upon which relief may be

granted.

## Dismissal of Count 1 – Fourteenth Amendment Claim

Plaintiff complains that he should not have been transferred away from Taylorville while his grievance over the proposed disciplinary transfer was still pending. Further, he notes that he was to be punished with only 15 days in segregation while at Taylorville, which he served there before his transfer. However, for 21 days after his arrival at Shawnee, he was held in "Receiving" status – where he was kept out of general population and treated as if he was still in segregation.

First, the transfer during the pendency of Plaintiff's grievance does not implicate any constitutional concerns. Even if the timing of the transfer ran afoul of the Illinois statute, a violation of a state statute or rule does not rise to the level of a constitutional violation, and does not create a federal claim. A federal court does not enforce state law and regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

Secondly, a transfer does not violate an inmate's constitutional rights, whether it is done for disciplinary reasons or because of non-disciplinary-related concerns.[1] "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison).

---

[1] An exception to this principle would be if a prisoner were transferred in retaliation for engaging in conduct protected by the First Amendment. *See, e.g., Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner). Plaintiff's Complaint does not indicate that retaliation played any part in the events at issue in this case.

5

Finally, the fact that Plaintiff was held in "Receiving" status for his first 21 days at Shawnee does not violate the Constitution. Prison officials have discretion to place inmates in temporary administrative segregation, including investigative lockdown or confinement and involuntary protective custody, even where such placement may impose certain restrictions on the inmate's privileges. In Plaintiff's case, it appears that his "Receiving" placement was a routine and/or temporary housing assignment related to his newly-transferred status. Such a short-term placement does not implicate a liberty interest under the Fourteenth Amendment. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995); *Pardo v. Hosier*, 946 F.2d 1278, 1281-84 (7th Cir. 1991); *Kellas v. Lane*, 923 F.2d 492, 494-95 (7th Cir. 1991); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983).

For these reasons, Plaintiff fails to state a claim upon which relief may be granted for a Fourteenth Amendment violation related to his transfer or placement in "Receiving" status. **Count 1** shall therefore be dismissed with prejudice.

**Dismissal of Count 2 – Eighth Amendment Claim**

Plaintiff claims that he was subjected to adverse conditions at Shawnee for his first 21 days there. These included denial of out-of-cell movement to meals and the dayroom, denial of access to the gym and very limited access to the yard, restriction to only 2 showers in 21 days, and placement in a cell that lacked working electrical and cable outlets.

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regards to any conditions of

confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

The requirement for Plaintiff to eat his meals in his cell, rather than in the chow hall with other inmates, does not implicate Eighth Amendment concerns. He does not claim that he was deprived of food, just that he was confined to his cell while eating. No viable constitutional claim is stated based on these facts.

The denial of Plaintiff's access to the gym and dayroom, and the restriction that allowed him only 2 hours' access to the yard during the 21 days in "Receiving" status, might raise a constitutional issue if Plaintiff was deprived of the ability to exercise. The Seventh Circuit has noted that a "[l]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28-day denial of exercise not unconstitutional); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986).

However, "[u]nless extreme and prolonged, lack of exercise is not equivalent to a medically threatening situation." *Harris*, 839 F.2d at 1236; *see Delaney v. DeTella*, 256 F.3d 679, 683-85 (7th Cir. 2001) (6-month denial states a claim; a strong likelihood of injury is present after 90 days).

In Plaintiff's case, he does not claim that he was deprived of all exercise, but only that he was denied out-of-cell exercise, with the exception of the 2 hours he was allowed to go to the yard. He does not allege that he suffered any symptoms or adverse effects during the time that his out-of-cell activity was restricted. Even in a cell, a prisoner may engage in some exercise by, for example, jogging in place or doing aerobics. *See e.g., Harris*, 839 F.2d at 1236. Furthermore, as in *Harris*, Plaintiff's situation lasted a short period of time, only 21 days; Harris's situation lasted 4 weeks. Unlike Harris, Plaintiff's yard access was not entirely denied, as he was allowed 2 hours yard time. After the 21-day restriction, it appears that Plaintiff was allowed access to the yard, gym, and any other out-of-cell activities on the same basis as other inmates at Shawnee. Under the factual scenario Plaintiff presents, his temporary restriction from the yard, gym, and dayroom was not a serious or lengthy enough deprivation to violate the Eighth Amendment. Consequently, Plaintiff's Eighth Amendment claim regarding denial of outdoor exercise time shall be dismissed.

Plaintiff's complaint that he was allowed only 2 showers during the first 21 days he was at Shawnee likewise does not state a viable Eighth Amendment claim. There is no clear standard as to the minimum frequency of showers an inmate must be allowed in a particular period of time. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (one shower per week for inmates in segregation is constitutionally sufficient). Having 2 showers within a 3-week period, absent extraordinary circumstances, is a short-term, temporary deprivation that

does not rise to the level of a constitutional violation. In Plaintiff's case, his allegations state that the shower restriction lasted only 21 days. *See Harris v. Fleming*, 839 F.2d 1232, (7th Cir. 1988) (deprivation of toilet paper for 5 days, and deprivation of soap, toothbrush, and toothpaste for 10 days, was a temporary, isolated incident due to negligence of defendants, and did not violate prisoner's constitutional rights); *Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986) (mere discomfort and inconvenience do not implicate the Constitution). Plaintiff's temporary shower restriction does not amount to a constitutional violation.

Finally, the lack of a working electrical outlet or cable connection in Plaintiff's cell does not violate the Eighth Amendment. In *Harris*, 839 F.2d at 1235-36, cited above, the Seventh Circuit noted that "[i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement." A temporary deprivation of the ability to use electrical appliances or cable television in his prison cell does not remotely affect Plaintiff's basic human needs for food, medical care, sanitation, or physical safety. This portion of Plaintiff's claim is patently frivolous.

Taken individually or taken together, the conditions imposed on Plaintiff during his 21-day stay in "Receiving" status at Shawnee did not amount to an objectively serious deprivation of a basic human need. Because the factual allegations in the Complaint do not show that Plaintiff faced an excessive risk of harm to his health or safety from the conditions, he fails to establish the first (objective) element of an Eighth Amendment claim. It is therefore not necessary to consider the subjective element, that is, whether any Defendant knew about the conditions yet failed to remedy them.

Plaintiff has not named any individual Shawnee officials as Defendants in connection with his claim. Had he raised any cognizable constitutional issues, he would be allowed to

amend his Complaint to identify the responsible Defendants.  Notably, Plaintiff has already been allowed to amend his Complaint once, and was instructed that he must provide sufficient facts to support his claim.  (Doc. 7).  As discussed above, Plaintiff's factual allegations in the First Amended Complaint regarding the temporary conditions at Shawnee do not support a viable constitutional claim for cruel and unusual punishment.  Leave to amend a complaint need not be granted when such amendment would be futile, as it would be in this case.  *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013); *Garcia v. City of Chicago,* 24 F.3d 966, 970 (7th Cir. 1994).  *See also Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (leave to amend should be freely given "unless it is certain from the face of the complaint that any amendment would be futile").  Accordingly, this action shall be dismissed for failure to state a claim upon which relief may be granted.

## Disposition

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.  All pending motions are **DENIED AS MOOT**.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.  *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e);

28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: May 16, 2017**

                                                                              s/ MICHAEL J. REAGAN
Chief Judge
United States District Court